UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LACEY PREWITT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES, ERVIN GARTNER, | ) | |
| JIM BUSHMAN, ANUJ PARTKH and | ) | 10 C 102 |
| AKAL SECURITY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| LACEY PREWITT, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 3136 |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES, JIM BUSHMAN and | ) | |
| ANUJ PARTKH, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on a motion for summary judgment by the

United States, James Bushman ("Bushman") and Anuj Parikh ("Parikh") (together

"Federal Defendants") and a motion for partial summary judgment by Akal Security,

Inc. ("Akal") and Ervin Gartner ("Gartner") (together "Akal Defendants") under

Federal Rule of Civil Procedure 56. For the following reasons, the Federal Defendants'

motion for summary judgment is granted and the Akal Defendants' motion for partial summary judgment is also granted.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

The Federal and Akal Defendants urge the Court to admit the assertions in their respective Statements of Material Facts filed pursuant to Local Rule 56.1 and to disregard Prewitt's responses for her failure to comply with Local Rule 56.1(b). Under Local Rule 56.1(a), a party moving for summary judgment is required to submit with its motion a statement of undisputed material facts that entitle it to judgment as a matter of law ("Rule 56.1(a) Statement"). N.D. Ill. R. 56.1(a); *Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Rule 56.1(b) directs the nonmovant to respond with two separate documents: (1) "a response to each numbered paragraph in the moving party's statement, including" specific citations to the record in the case of any disagreement ("Rule 56.1 Response"), and (2) "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment . . . " ("Statement of Additional Facts"). N.D. Ill. R. 56.1(b)(3)(B), (C). Rule 56.1(b) offers "the only acceptable means of disputing the other party's facts and of presenting additional facts to the district court." *Midwest Imports v. Coval*, 71 F.3d 1311, 1315 (7th Cir. 1995). District courts are entitled to expect strict compliance with

Local Rule 56.1. *Raymond v. Ameritech, Corp.*, 442 F.3d 600, 604 (7th Cir. 2006).

When a nonmovant fails to adhere to Local Rule 56.1(b), the Court may admit the

movant's Rule 56.1 Statement and disregard the nonmovant's submissions. *Malec v.*

*Sanford*, 191 F.R.D. 581, 583-84 (N.D. Ill. 2000).

The Federal and Akal Defendants contend that Prewitt's Rule 56.1 Responses are

deficient for two reasons. First, they point out that in Prewitt's Rule 56.1 Response, her

responses admitting the truth of the Akal and Federal Defendants' asserted factual

statements go on to state additional facts.[1] Rule 56.1(b)(3)(B) "requires the responding

party to either admit the assertion without contradictory qualification or deny it and

identify the facts that support the denial." *Callahan v. City of Rockford*, No. 90 C

20090, 1994 U.S. Dist. LEXIS 3320, at *10 (N.D. Ill. March 2, 1994). Adding

additional facts in response to an admitted factual statement thus falls outside the scope

of Rule 56.1(b)(3)(B). The Court therefore disregards all of Prewitt's additional

statements in her responses that admit the truth of Defendants' Rule 56.1(a) Statements.

Second, the Federal and Akal Defendants argue that Prewitt's Rule 56.1(b)

Response improperly disputes several assertions that (1) do not include specific

---

[1] In response to the Federal Defendants' Rule 56.1(a) Statement, Prewitt admits, but adds additional facts to paragraphs 3, 5, 6, 8, 9, 13, 14, 17, 22, 24, and 29. Prewitt admits and adds additional facts to paragraphs 3, 4, 12, 13-19, and 29-32 in her Rule 56.1(b) Response to the Akal Defendants' 56.1(a) Statement.

citations to the record, and (2) do not create a genuine issue of material fact.[2] Prewitt's unsupported statements do not comply with Rule 56.1(b)(3)(B), and are therefore disregarded by the Court. Additionally, Prewitt attempts to dispute facts within Defendants' Rule 56.1(a) Statements with pages upon pages of extraneous and irrelevant facts. Rule 56.1 is clear: if a plaintiff wishes to submit additional facts to attack a summary judgment motion, she must do so with a Statement of Additional Facts in a filing separate from her Rule 56.1 Response. N.D. Ill. 56.1(b)(3)(C). Prewitt failed to submit a Statement of Additional Facts. To the extent Prewitt attempts to add additional facts via her Rule 56.1(b) Response, the Court disregards these assertions and admits Defendants' statements that are not properly disputed. *See Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005) (affirming district court's decision to ignore facts submitted by nonmovant in its Rule 56.1(b) Response).

## II.    Factual Background

On January 7, 2008, Prewitt visited the United States Social Security Administration ("SSA") Office in Elgin, Illinois ("SSA Office") to find out why she did not receive her monthly income benefits. Upon entering the SSA Office, Gartner instructed Prewitt to wait in the reception area until her name was called. Gartner,

---

[2] Prewitt attempts to add extraneous facts outside the scope of her dispute with the Federal Defendants' Rule 56.1(a) Statement with respect to paragraphs 7, 10-12, 15, 16, 18, 19, 21, 23, and 25-28 of the Federal Defendants' Statement. Prewitt attempts to dispute the Akal Defendants' 56.1(a) Statement in paragraphs 8-11, 16, 20, 21, 23, 25, 26, 34, and 35.

Akal's employee, was a security guard assigned to provide security services to the SSA Office. He had been acquainted with Prewitt for two years from her previous visits to the SSA Office. Approximately three weeks prior to Prewitt's January 7th visit, Gartner called an Akal supervisor because Prewitt's visits had become more frequent, and her behavior had grown more aggressive and disruptive. Gartner's supervisor directed him to detain Prewitt for possible arrest if she caused a disturbance again. Gartner also notified Bushman, the SSA Office district manager, of Prewitt's behavior prior to January 7th. Nevertheless, Gartner and Prewitt chatted amiably while she waited for her name to be called.

Once Prewitt's name was called, she walked to Parikh's desk. Parikh was employed with the SSA as a Claims Representative. His duties included responding to questions by members of the public regarding Social Security benefits. Parikh told Prewitt that she was not entitled to social security benefits because, according to the documents then before him, she was employed. Prewitt then became angry and loudly told him that she was unemployed and entitled to Social Security benefits. As she spoke, Prewitt stood up from her chair and leaned over the desk that separated them. This, according to Parikh, made him feel threatened. Prewitt then informed Parikh that she would leave the SSA Office, call the SSA and make an appointment to return to

discuss the matter at a later date. She then turned and began walking toward the exit. Parikh shouted at her to "sit down!" Prewitt continued walking toward the exit.

As Prewitt was walking through the waiting area toward the SSA Office exit, Gartner said to her, "The next time you come in here, if you don't behave like a lady, I'm just gonna have to arrest you." Gartner asked Prewitt about her meeting with Parikh, told her that her behavior had caused problems in the past, and that he needed to detain her until he determined that Parikh was safe. Gartner then wrestled her to the ground and detained her. Gartner testified that he did so because he did not know if Prewitt had harmed Parikh and was alarmed at how quickly Prewitt was exiting the SSA Office. Gartner further stated that before and during the altercation, Prewitt hurled a slew of curse words and insults at him and Parikh. Both Prewitt and Gartner sustained injuries as a result of the altercation. Bushman called the Elgin police upon learning of the disturbance. Police officers arrived soon after and found Gartner still restraining Prewitt. An ambulance arrived soon thereafter, which transported Prewitt to the hospital.

*Video Recordings of the Incident*

The premises of the SSA Office premises were under the surveillance of eight security cameras: four were positioned outside and four were inside. The video feed was captured on a hard drive, where it was supposed to be stored until it was over-

written by newer incoming data. When properly set, the recorded video remained available for 72 hours.

Although the contract between Akal and the SSA indicates that Akal personnel was to be responsible for maintaining and preserving video recordings, Bushman testified that he, as the SSA Office's district manager, was responsible for ensuring for the maintenance of the cameras and recordings. Bushman was also in charge of preserving the video tapes in the event that a video might become evidence in a legal proceeding. On January 8, 2008, Bushman attempted to retrieve and preserve the video tape depicting the incident that occurred the day before. However, he found that the recording had been over-written and was lost. Bushman determined that the resolution setting for the video had been set at a high level, resulting in the recordings being over-written by new data every 8 to 10 hours instead of every 72 hours. Bushman received a subpoena sometime between January 24 and 29, 2008 from the Kane County Circuit Court requesting video recordings of the January 7, 2008 incident. Because the video had been erased, Bushman failed to comply with the subpoena.

*Criminal Case Against Prewitt*

After Elgin police arrived on the scene in the wake of the incident, a police officer asked Gartner if he wished to file a criminal complaint against Prewitt. After first conferring with Bushman, Gartner agreed to do so. Prewitt was charged with

disorderly conduct in the Circuit Court of Kane County. The prosecuting attorney advised Gartner to attend the regularly scheduled court hearings. Gartner attended the first three, but eventually stopped attending. After 23 months and several court hearings and continuances, Gartner told the prosecutor that he was no longer interested in pursuing the case. Gartner maintains that he was no longer an employee of Akal, and that he wanted to give Prewitt a break. The prosecutor dropped the charges against Prewitt. Gartner nevertheless maintains that he believed that Prewitt acted unreasonably during their altercation.

## III.    Procedural Background

Prewitt brought suit against the Federal and Akal Defendants in this Court, invoking subject-matter jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1346, 2680. Prewitt's claims against the Federal and Akal Defendants arise out of two lawsuits. Prewitt first filed suit in Case No. 10 C 102 against the United States, Parikh, Bushman, and the Akal Defendants for state common law and 42 U.S.C. § 1983 claims. The Court dismissed all common law claims against Parikh and Bushman based on their Westfall Act immunity. *See* 28 U.S.C. § 2679(d)(1) (a federal employee is not subject to suit in his personal capacity for common law torts). We also dismissed all claims against the United States due to Prewitt's failure to exhaust her administrative

remedies under the Federal Tort Claims Act ("FTCA"), *Id.* § 2675(a); *see Prewitt v. United States*, 10 C 102, 2010 U.S. Dist. LEXIS 80737 (N.D. Ill. Aug. 9, 2010).

While Case No. 10 C 102 was pending, Prewitt proceeded to exhaust her remedies under the FTCA and subsequently filed a second lawsuit, Case No. 1136, against the United States for the same acts underlying her claims in the first lawsuit. The Court dismissed all of Prewitt's claims under Federal Rule of Civil Procedure 12(c) except for (1) spoliation of evidence, and (2) intentional and negligent infliction of emotional distress. *See Prewitt v. United States*, 11 C 3136, 2011 U.S. Dist. LEXIS 144260 (N.D. Ill. Dec. 15, 2011); *as clarified in Prewitt v. United States*, 11 C 3136, 2012 U.S. Dist. LEXIS 7293 (N.D. Ill. Jan. 23, 2012).

Now before the Court are motions brought by both the Federal and Akal Defendants. The Federal Defendants move the Court to grant summary judgment on all remaining claims against them for: (1) false arrest under 42 U.S.C. § 1983 against Parikh and Bushman in their individual capacities; (2) negligent spoliation of evidence; and (3) intentional and negligent infliction of emotional distress against the United States. The Akal Defendants move for partial summary judgment on Prewitt's claims for (1) false arrest and excessive force under 42 U.S.C. § 1983; (2) negligent spoliation

of evidence; (3) malicious prosecution; (4) abuse of process; and (5) an independent

claim for respondeat superior.[3]

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery and disclosures

on file, and affidavits establish that there is no genuine issue of material fact and that

the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Winsley v.

Cook Cnty.*, 563 F.3d 598, 602-03 (7th Cir. 2009). A genuine issue of material fact

exists when, based on the evidence, a reasonable jury could find in favor of the

nonmovant. *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir.

2010). The Court construes all facts and draws all reasonable inferences in favor of the

nonmovant. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2010).

## DISCUSSION

### I.     Claims Against the Federal and Akal Defendants

#### A.     Negligent Spoliation

Prewitt maintains that the Federal and Akal Defendants are liable for negligent

spoliation of evidence for failing to preserve the video taped recording that presumably

would have captured the January 7, 2008 incident. The Defendants argue that they are

entitled to summary judgment because no evidence in the record shows that Prewitt

---

[3]  The Akal Defendants are not moving for summary judgment as to Prewitt's state law claims of assault, battery, and intentional and negligent infliction of emotional distress.

requested that the recording be preserved prior to its scheduled destruction in the ordinary course of business.

Illinois courts interpret an action for negligent spoliation under existing negligence law. *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 270 (Ill. 1995). To maintain a claim for negligence, a plaintiff must demonstrate that the defendant owed the plaintiff a duty, the defendant breached that duty, the breach proximately caused the plaintiff to be injured, and damages. *Id.* The Illinois Supreme Court has articulated a two-prong test to determine whether a defendant has a duty to preserve evidence. *Dardeen v. Keuhling*, 821 N.E.2d 227, 231 (Ill. 2004). First, a duty may arise by agreement, contract, statute, special circumstances, or a defendant's voluntary assumption of a duty by its affirmative conduct. *Id.* If such a duty exists, then the Court must determine if a reasonable person should have foreseen that the evidence was material to a potential civil action ("foreseeability prong"). *Id.* A plaintiff must satisfy both prongs to establish that the defendant owed her a duty. *Id.*

In determining whether a duty to preserve evidence arises from special circumstances, courts generally consider the likelihood of litigation, whether a plaintiff requested that the defendant preserve the evidence, and whether the defendant had possession of the evidence. *See Dardeen*, 821 N.E.2d at 232 (finding no special circumstances where the plaintiff never asked the defendant to preserve the evidence,

the defendant did not have possession of the evidence, and the defendant was not a potential litigant at the time the evidence was destroyed); *Miller v. Gupta*, 672 N.E.2d 1229, 1233-34 (Ill. 1996); *see also Andersen v. Mack Trucks, Inc.*, 793 N.2d 962, 969 (Ill. App. Ct. 2d Dist. 2003) (holding that a mere request to preserve evidence is insufficient to impose a duty absent some further special relationship).  Courts have held that no duty to preserve evidence inheres to a defendant if the plaintiff does not specifically ask the defendant to preserve the evidence before it is destroyed in the ordinary course of business.  *See Olivarius v. Tharaldson Prop. Mgmt.*, 695 F. Supp. 2d 824, 830 (N.D. Ill. 2010) (finding no special circumstance existed where the plaintiff notified the defendant of her injury after the defendant destroyed evidence in the ordinary course of business); *Welch v. Wal-Mart Stores, Inc.*, No. 04 C 50023, 2004 U.S. Dist. LEXIS 12165, at *11-12 (N.D. Ill. June 30, 2004) (finding no duty to preserve evidence where there was no demand to preserve a video tape showing the plaintiff's injury prior to the tape's scheduled destruction).

In the Court's October 26, 2011 Memorandum Opinion denying in part the United States' motion for judgment on the pleadings, we determined that Prewitt's negligent spoliation claim depended on "whether Prewitt requested the evidence from the SSA Office before it was destroyed in the ordinary course of business."  *Prewitt v. United States*, No. 11 C 3136, 2011 U.S. Dist. LEXIS 123614, at *10 (N.D. Ill. Oct. 26,

2011).  We denied the United States' motion because we inferred from her pleadings that she could have requested the video recordings before their scheduled destruction. *Id.*

Defendants submit evidence showing that the SSA Office's video recordings were regularly scheduled to be erased every 72 hours, that the recording in question was likely erased 8-10 hours after the incident occurred because the video resolution was set too high, and that Prewitt did not request the tapes before either of these events.  The Akal Defendants were not asked to preserve the recording at any time.  Bushman received a subpoena from the Kane County Circuit Court requesting the production of the video on January 24, 2008 at the earliest, over two weeks after the incident.  Prewitt submits no countervailing evidence suggesting that she requested the evidence prior to that date.  Accordingly, the Federal and Akal Defendants owed Prewitt no duty to preserve the video recording, and are therefore entitled to summary judgment.

Because the Federal and Akal Defendants had no duty to preserve the January 7, 2008 video recording, their respective motions for summary judgment are granted.

## B.    42 U.S.C. § 1983

Prewitt claims that the Federal and Akal Defendants violated her rights under the Fourth Amendment as a result of Gartner detaining and injuring her.  The Federal Defendants argue that Prewitt's § 1983 claims against Parikh and Bushman are not

permitted under the FTCA. The Akal Defendants assert that they are not proper § 1983

defendants because they did not act under the color of state law.

### 1.    *Federal Defendants*

The Federal Defendants argue the FTCA precludes Prewitt from maintaining its

§ 1983 claims. The FTCA's "judgment bar" provides that:

> The judgment in an action under [28 U.S.C. § 1346(b)] shall constitute a
> complete bar to any action by the claimant, by reason of the same subject
> matter, against the employee of the government whose act or omission
> gave rise to the claim.

28 U.S.C. § 2676. Under 28 U.S.C. § 1346(b)(1), a claimant may sue the United States

for torts committed by federal employees when acting within the scope of their

employment. The Seventh Circuit has acknowledged that claims arise out of the "same

subject matter" if they result from the same "actions, transactions, or occurrences."

*Manning v. United States*, 546 F.3d 430, 433 (7th Cir. 2008).

The Federal Defendants contend that 28 U.S.C. § 2676 bars Prewitt's § 1983

claims against Parikh and Bushman because the Court has already adjudicated an FTCA

claim based on the same underlying conduct. *See Prewitt*, 2011 U.S. Dist. LEXIS

144260. On December 15, 2011, the Court granted the United States' Rule 12(c)

motion and dismissed Prewitt's claims for infliction of emotional distress against the

United States to the extent that they were based on Gartner's detention of Prewitt. *Id.*

at *9. Gartner's § 1983 claims against Parikh and Bushman are based on the same

conduct. Accordingly, under 28 U.S.C. § 2676, the December 15th judgment in favor of the United States bars Prewitt's § 1983 claims against federal employees Parikh and Bushman.

Prewitt argues that (1) the judgment bar does not apply here because the Court's dismissal of the claim against the United States was not before a jury, and (2) the United States' failure to substitute itself for Parikh and Bushman with respect to the false arrest claim is an admission that the individuals were acting outside the scope of their employment. The applicability of 28 U.S.C. § 2676 is conditioned on neither a judgment by jury, nor the federal employee's acting within the scope of employment. *See Manning*, 546 F.3d at 433 ("Courts must apply a statute as written when the language is plain and unambiguous."); *see also Hoosier Bancorp v. Rasmussen*, 90 F.3d 180, 185 (7th Cir. 1996) (affirming the dismissal of a *Bivens* claim under § 2676 based on eleven prior adjudications prior to trial). Furthermore, reading these conditions into the 28 U.S.C. § 2676 runs contrary to the broad reach of the statute's preclusive language. *See Manning*, 546 F.3d at 435 ("because of the broad language of the judgment bar, plaintiffs must make strategic choices in pursuing the remedies."); *see also Rodriguez v. Hardy*, 873 F.2d 814, 816 (5th Cir. 1989) (referring to the 28 U.S.C. § 2676's language as "broad and sweeping."). In light of the plain language and broad sweep of the judgment bar, Prewitt's arguments are unpersuasive.

Because § 2676 precludes Prewitt's § 1983 claims against Parikh and Bushman, the Federal Defendants are entitled to summary judgment.

### 2.     *Akal Defendants*

The Akal Defendants argue that they are entitled to summary judgment on Prewitt's § 1983 claims because the undisputed evidence shows that neither Gartner nor Akal were acting under color of state law.  Section 1983 provides for a remedy to individuals who have been deprived of a constitutional right by a person acting under color of state law.  42 U.S.C. § 1983; *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 923 (1982).  Although § 1983 claims are typically brought against state government employees or officials, a private party may be liable under § 1983 if the state (1) effectively directs or controls the actions of the private party such that the state can be held responsible for the private party's decision, or (2) delegates a public function to a private person or entity.  *Payton v. Rush-Presbyterian St. Luke's Med. Ctr.*, 184 F.3d 623, 628 (7th Cir. 1999).

The Akal Defendants argue that they are entitled to summary judgment because the undisputed evidence shows that neither Gartner nor Akal acted under color of state law.  Specifically, the Akal Defendants maintain that Gartner was employed as a security guard for Akal, a private company with no affiliation with the State relevant to his detention of Prewitt.  Prewitt points to no connection or coordination between the

Akal Defendants and the State that relates to her detention. *See Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 897-98 (7th Cir. 2004). Accordingly, the Akal Defendants' motion for summary judgment on Prewitt's § 1983 claims are granted.

## II. Infliction of Emotional Distress Claims Against Federal Defendants

Prewitt's remaining claims against the Federal Defendants are for intentional and negligent infliction of emotional distress as a result of Parikh shouting at her to sit down. The Federal Defendants argue that summary judgment is appropriate because Parikh's conduct does not rise to actionable conduct.

To maintain a claim for infliction of emotional distress, a plaintiff must demonstrate that the conduct complained of was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency." *Public Finance Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). "Mere insults, indignities, threats, annoyances, petty oppressions or trivialities" do not constitute actionable conduct for an infliction of emotional distress claim. *Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998) (citations omitted). Because Parikh's shout by itself cannot give rise to a claim for infliction of emotional distress, the Federal Defendants are entitled to summary judgment.

**III.  Claims Against the Akal Defendants**

**A.  Malicious Prosecution**

Prewitt alleges that the Akal Defendants are liable for malicious prosecution as a result of Gartner filing a criminal complaint against her for disorderly conduct.  To establish a *prima facie* case for malicious prosecution under Illinois law, a plaintiff must demonstrate: (1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for the proceeding; (4) the presence of malice; and (5) damages. *Johnson v. Target Stores, Inc.*, 791 N.E.2d 1206, 1219 (Ill. App. Ct. 1st Dist. 2003) (citation and quotation omitted).  The absence of one of these elements precludes the plaintiff from pursuing the claim. *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996).

The Akal Defendants contend that they are entitled to summary judgment because the undisputed facts show that probable cause existed for Prewitt's arrest and prosecution for disorderly conduct.  In the context of a malicious prosecution action involving a criminal proceeding, probable cause is present when "a state of facts . . . would lead a person of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person arrested committed the offense charged." *Johnson*, 791 N.E.2d at 1219 (citation omitted).  A finding of probable cause does not

require that the defendant's belief is correct; only that it was reasonable. *See Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994) (citation omitted).

In Illinois, an individual commits disorderly conduct when she "knowingly does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1). Generally, one breaches the peace if she threatens another, or her conduct has an effect on a surrounding crowd. *People v. Lennon*, 957 N.E.2d 1241, 1249 (Ill. App. Ct. 2d Dist. 2011) (citation omitted). The offense of disorderly conduct "embraces a wide variety of conduct," including violent acts and words likely to produce violence in others that serve "to destroy or menace the public order and tranquility." *In re B.C.*, 680 N.E.2d 1355, 1363 (Ill. 1997).

The record indicates that during Prewitt's visit to the SSA Office on January 7, 2008, she (1) used a racial epithet to refer to Parikh; (2) told Gartner that "ain't no mother fucker detaining me for any reason;" (3) called Gartner a "scum bag mother fucker" while he handcuffed her; (4) called Gartner a "white mother fucker;" (5) called Bushman a "white mother fucker Polack;" and (6) threatened to "kick all of your asses." Prewitt's barrage of curses and threats directed at Gartner, Parikh, and Bushman sufficiently establishes that a reasonable person in Gartner's position would believe that Prewitt violated the disorderly conduct statute. *See Smith v. Vill. of Norridge*, No. 06 C 4250, 2009 U.S. Dist. LEXIS 5037, at *17-19 (N.D. Ill. Jan. 22, 2009)

(finding that a police officer had probable cause to arrest the plaintiff after being told by a private security guard that the plaintiff caused a disturbance at a shopping mall and screamed at store and security personnel).

Prewitt suggests that Gartner's decision to drop the criminal case against her after nearly two years of legal proceedings demonstrates a genuine dispute of fact as to Gartner's belief that she violated the law. Whether probable cause existed for an arrest is measured by an objective standard. *See Aboufariss v. City of DeKalb*, 713 N.E.2d 804, 809 (Ill. App. Ct. 2d Dist. 1999) (probable cause is determined by assessing "whether, under the facts known to an arresting officer, a prudent person would believe a crime had been or was being committed."). Gartner's subjective motivations for filing the criminal complaint are therefore irrelevant to determining whether probable cause existed for her arrest.

Because the undisputed facts demonstrate that probable cause existed for Prewitt's arrest and prosecution for disorderly conduct, the Akal Defendants' motion for summary judgment is granted.

## B.     Abuse of Process

Prewitt alleges that the Akal Defendants are liable for abuse of process because Gartner pursued her criminal prosecution and caused the case to be delayed for nearly two years in order to discourage her from returning to the SSA Office. A defendant is

liable for abuse of process if he employs the legal process to accomplish an illegitimate end. *See Cmty. Nat'l Bank v. McCrery*, 509 N.E.2d 122, 124 (Ill. App. Ct. 3d Dist. 1987). To maintain an abuse of process claim, a plaintiff must demonstrate "the existence of an ulterior purpose," and "an act in the use of the process not proper in the regular prosecution of the proceeding." *Holiday Magic, Inc. v. Scott*, 282 N.E.2d 452, 456 (Ill. App. Ct. 1st Dist. 1972).

The undisputed evidence demonstrates that Gartner signed the criminal complaint because Prewitt broke the law. After nearly two years of proceedings before the Kane County Circuit Court, Gartner informed the prosecutor of his desire to cease pursuing the case and asked the prosecutor to drop the charge against Prewitt. Gartner testified that he decided to drop the case because he was retired and no longer an Akal employee, and that he wanted to relieve Prewitt of any harm that might come from a criminal conviction. Prewitt submits no evidence suggesting that Gartner signed the criminal complaint as a means to intimidate her from returning to the SSA Office. Furthermore, Prewitt puts forth no evidence supporting the allegation that Gartner's failure to appear for several court hearings demonstrates an ulterior motive, or that his absence caused the continuances and delay of which she now complains. Finally, Prewitt highlights nothing suggesting that Gartner's stated reasons for dropping the case against her are pretextual to a more sinister motive. In sum, Prewitt fails to submit

anything supporting her allegations that Gartner harbored an illicit motive in pursuing the criminal case against her. Accordingly, summary judgment is appropriate. *See Payton v. Rush-Presbyterian St. Luke's Med. Ctr.*, 82 F. Supp.2d 901, 910 (7th Cir. 2000). The Akal Defendants' motion is granted.

## C.    Respondeat Superior

Plaintiff brings an independent claim for respondeat superior against Akal for the acts committed by Gartner. Respondeat superior is not an independent theory of liability, but a theory under which a plaintiff may hold an employer liable for the acts of an employee done in the scope of his employment. *See Prewitt v. United States*, 2011 U.S. Dist. LEXIS 144260, at *10. Inasmuch as this is not a substantive claim, the respondeat superior claim is dismissed as to those claims for which summary judgment is granted in favor of Akal.

## D.    Prewitt's Remaining State Law Claims

Prewitt's remaining claims for assault, battery, and intentional and negligent infliction of emotional distress each arise under state law. Because none of Prewitt's federal claims remain, the Court declines to exercise supplemental jurisdiction over her state law claims. The Court dismisses Prewitt's remaining state law claims *sua sponte* for want of subject-matter jurisdiction.

**CONCLUSION**

For the foregoing reasons, the Court grants the Federal Defendants' motion for summary judgment, and grants the Akal Defendants' partial motion for summary judgment. The Court further dismisses Prewitt's remaining state law claims for want of subject-matter jurisdiction.

_____
Charles P. Kocoras
United States District Judge


Dated:  October 31, 2012